542 So.2d 23 (1989)
STATE of Louisiana
v.
Donald JUNIOR.
No. 88-KA-426.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1989.
Writ Denied June 30, 1989.
*24 Regan & Associates, Martin E. Regan, Jr., New Orleans, for appellant.
John M. Mamoulides, Dist. Atty., Guy De Laup, Asst. Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty. (Louise Korns, of counsel), Gretna, for appellee.
Before CHEHARDY, C.J., and GAUDIN and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Donald Junior appeals his conviction of armed robbery under LSA-R.S. 14:64. His primary assignment of error argues the incorrectness of the eyewitness identification. Appellant also complains his trial counsel was ineffective, and his appellate counsel was not allowed to conduct post-trial evidentiary proceedings to obtain pre-trial discovery. We affirm defendant's conviction and sentence for the reasons assigned below.
On January 23, 1987 at 12:50 a.m., Donald Junior entered Dan's Food Store in Gretna, Louisiana. He obtained a six-pack of beer from the rear of the store, approached the cashier's counter, and asked cashier Karen Boyd for two cartons of cigarettes. He then pointed a gun at Boyd and demanded the money from the register. When she did not comply immediately, Junior told Boyd he would shoot her if she did not open the register. Defendant took the cash Boyd produced, the beer and the cigarettes, and left the store on foot. Boyd activated the alarm button under the register.
Officer Titman of the Gretna Police Department responded to Boyd's call. Boyd related the events of the robbery to him. She described her assailant as a black male with a new-type Afro haircut, cut high on the top and tight on the sides. She described his long dark coat. She stated that he pointed a large revolver at her; she was unsure of the gun's color. Thirty minutes later, Sgt. Anthony Christiana of the Gretna Police Department interviewed Boyd at the scene. She told him that she could positively identify the robber if she saw him again.
Boyd accompanied Sgt. Christiana to police headquarters, where she assisted him in compiling a composite description that she stated resembled the man who had committed the robbery. Reviewing photograph books, Boyd selected a photograph; she stated that it was a picture of the man who robbed her. The photograph was that of Donald Junior. Boyd told Sgt. Christiana that the only difference between the man in the photograph and her assailant was the hairstyle. The man in the photograph had a fuller-type haircut, whereas her assailant's hair was cut short on the sides and medium to bushy on the top. At 4 p.m. on the afternoon of the robbery, Boyd returned to police headquarters, where she viewed a photographic lineup photographs of six black males. Boyd selected the photograph of Donald Junior, stating, "When he robbed me, his hair was shorter."
On the basis of Boyd's identification, Donald Junior was arrested three days after the robbery. Sgt. Christiana took a color Polaroid photograph of Junior and compiled a second photographic lineup. (At the time of arrest, Donald Junior was wearing his hair shorter than it had been at the time of the first two photographs that Boyd identified.) From these five photographs Boyd positively identified Donald Junior as the man who committed the armed robbery. Subsequent execution of a search warrant at defendant's residence yielded a blue R.P.M. jacket and a Titan Tiger .38 caliber nickel-plated revolver.
At arraignment, Junior entered a plea of not guilty to the charge of armed robbery. After the hearing in July 1987, defense counsel's motion to suppress the identification of Junior was denied. At the December 1987 trial, the 12-member jury found defendant guilty of armed robbery. Based on Boyd's positive identification, Junior was sentenced to 15 years at hard labor without benefit of parole, probation or suspension of sentence. From the conviction and sentence, Donald Junior appeals.

*25 ASSIGNMENT OF ERROR No. 2
To insure the guarantee of the defendant's Fourteenth Amendment due process rights and to support a criminal conviction, the reviewing court must determine whether the sufficiency of the evidence could reasonably have supported a verdict of guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence of record in the light most favorable to the prosecution, any rational trier of fact could have found every element of the crime established beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Mussall, 523 So.2d 1305 (La.1988).
In State v. Smith, 430 So.2d 31 (La. 1983), dissenting opinion 432 So.2d 206 (La. 1983), the reviewing court sustained defendant's conviction for aggravated burglary and forcible rape on the victim's positive identification of her assailant in a pre-trial photographic lineup and repeatedly in open court. In so doing, the court reiterated the standard set forth in Jackson, supra, that when the key issue in the case is the identification of defendant as the assailant, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. at 45; State v. Brady, 414 So.2d 364 (La.1982). We examine the trial record in light of the foregoing principles.
A conviction of armed robbery under R.S. 14:64 requires proof of the taking of a thing of value from the control of another, by force or intimidation, while armed with a dangerous weapon. Although it is implied rather than expressly stated in the statute, identification of the perpetrator of the crime is required. Boyd testified that Junior stood two to three feet from her for two minutes, pointed his gun at her and demanded money. He fled with the register receipts. Thereafter Boyd unequivocally identified Junior as the robber on three separate pre-trial occasions. She identified Junior as her assailant in open court.
Junior testified in his own behalf. He contended that on January 22 he picked his girl friend Vanessa Smith up from school at 9:30 p.m. and remained with her at her home for two and a half hours. He went straight to his own home where he called Vanessa and spoke with her by telephone until 12:30 a.m., January 23. Vanessa Smith stated that Junior left her house at 11:45 p.m. He called her at 11:52 p.m. and the two talked on the telephone for one-and-a-half hours. She believed that defendant called her from his home. Janice Junior, the defendant's sister, recalled that he returned to the family home at 11:30 p.m. He took the telephone to his room. Though she did not see or hear the defendant thereafter, she saw the extension cord running through his bedroom door. She stated that defendant was on the telephone, she believed with Vanessa, until 1:30 a.m.
Defendant made no showing that the photographic lineups were improper. See State v. Smith, supra, at 43. Despite the testimony of defendant and his alibi witnesses, the jury obviously gave more credence to the testimony of the eyewitness Boyd. LSA-C.Cr.P. art. 802(3). We are satisfied that, based on Boyd's identification, the jury could reasonably have found that the elements of LSA-R.S. 14:64 were satisfied and that the identification of the defendant was proved beyond a reasonable doubt. State v. Brady, 524 So.2d 1356 (La.App. 1 Cir.1988).
Defendant's assertions both at trial and in brief that Boyd inconsistently described her assailant's hair, coat and gun, do not persuade us otherwise. Boyd's statement to Officer Titman that the gunman's hair was "high on top" and "tight on the side" agrees with her comment to Sgt. Christiana, during the first photographic lineup, that his hair was short on the side and "medium, rather bushy on the top." Although the composite drawing depicts the suspect with a flat-top haircut, Sgt. Christiana admitted that Boyd did not describe the assailant's hair that way. He testified that the composite portrait of a suspect is not and could never be exact. When it was completed, Boyd agreed that the composite *26 resembled the robber. The record reflects that Boyd's description of her assailant was consistent.
Additionally, defendant takes issue with Boyd's description of her assailant's coat. Boyd stated that during the robbery the gunman wore his coat over his shoulders and held his gun waist high, close to his side. She described the coat to Officer Titman as "long." During the suppression hearing, she characterized the coat as dark or navy blue and mid-length, of heavy fabric similar to tweed. At trial Boyd testified that the robber's coat fell to below the waist, but she was not sure of its exact length because the register counter partially obscured her vision. In support of the misidentification theory, defendant points to the search warrant which describes the coat as "a black or dark colored knee length wool style overcoat." He cites Officer Titman's trial testimony that Boyd described the coat as "long" and, reading from the initial report, as a "black trench coat." The conflict in descriptions notwithstanding, the coat seized pursuant to the search of defendant's home and introduced as State Exhibit S-9 was a blue coat of between waist and knee length. When Sgt. Christiana showed the coat to Boyd, she identified it as the coat that the gunman wore during the robbery. We find no substantial inconsistency in Boyd's description of the gunman's coat and the evidence presented at trial.
Finally, Junior takes issue with what he contends is Boyd's conflicting description of the gun, alternately as a blue steel revolver (dark in color) or silver colored. Officer Titman testified that Boyd was sure that the gunman held a revolver but was unsure of whether it was bright nickel or darker in color. Sgt. Christiana learned of the revolver's description as "blue steel" from Officer Titman. At police headquarters, when he asked Boyd to describe the weapon, he found that she did not understand the color distinction. The Sargeant showed Boyd a blue steel revolver (blackish in color) and a nickel revolver; she chose the nickel revolver in describing the weapon used in the robbery. At trial Boyd testified that the robber shielded the gun with his coat. She saw the gun barrel which she described as "darker silver" sticking out from beneath the coat.
Although her language differed, we find that Boyd described her assailant's hair, coat and gun consistently on repeated occasions. The disagreements in her description do not create a reasonable probability that she misidentified the defendant as her assailant. The slight discrepancies in her verbiage do not support the conclusion that Boyd's identification of defendant Junior as the armed robber was error.

ASSIGNMENT OF ERROR No. 1
Defendant next asserts his trial attorney was ineffective. He suggests that his trial counsel's failure to confront prosecution witnesses with the initial police report, failure to secure a copy of Boyd's testimony at the suppression hearing, and failure to call defendant's mother as a witness prejudiced the defendant's case.
Allegations of ineffective assistance of counsel are more properly raised by an application for post-conviction relief, rather than by an assignment of error presented on the direct appeal of the case. State v. Brown, 504 So.2d 1163 (La.App. 5 Cir.1987). When the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the court can address it in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982). This circumstance is not present in the instant case. Though we perceive from the record that Officer Titman was examined-regarding the contents of the "initial report", the police report was not introduced as an exhibit by either the prosecution or the defense. In the absence of the police report, we decline to analyze defendant's contentions of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant's assignment of error arguing his ineffective representation by trial counsel is premature. State v. Truitt, 500 So.2d 355 (La.1987).

*27 ASSIGNMENT OF ERROR No. 3
As a final assignment of error, appellant claims that this court, in previous action, denied his appellate counsel open-file discovery and prejudiced his appeal. We find no merit in this contention.
After defendant's appeal was lodged, his appellate counsel moved to remand the case to the district court for post-trial evidentiary proceedings. Counsel had filed a show-cause order in the district court requesting the district attorney's office to permit him to review materials that were shown to defendant's trial counsel in satisfaction of pre-trial discovery motions. In the motion for remand, counsel admitted that the trial court had no jurisdiction to hear the show-cause rule and sought remand to obtain the discovery for review in preparation of his appeal brief.
This court denied counsel's motion to remand on October 3, 1988. The Supreme Court denied defense counsel's writ application on November 8, 1988 (No. 88-OK-2669). Appellant reurged the motion to remand in this court, where it was denied on December 9, 1988. Defendant now appeals this court's denial of his motions to remand, claiming prejudice.
What appellant seeks is for this court to grant a third hearing on the motion to remand for additional discovery. Under the principle of "law of the case" an appellate court will not, on subsequent appeal, reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 256 So.2d 105 (La. 1971). The policy applies against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court. It is applicable to all decisions of an appellate court, not solely those arising from full appeal. Coney v. Coney, 48 So.2d 902 (La. 1950), appeal after remand, affirmed in part, reversed in part 56 So.2d 841 (La. 1952); Blumfield v. Dyson, 418 So.2d 21 (La.App. 1 Cir.1982). One reason for imposition of the doctrine is the avoidance of indefinite relitigation of the same issue; but it will not be applied in cases of palpable former error. Day, supra, at 107.
This situation is governed by the reasoning of State v. King, 520 So.2d 1260 (La. App. 5 Cir.1988). Therein, defendants moved to suppress evidence, alleging that no probable cause existed for their arrest. The trial court denied the motion; both the appellate court and the Supreme Court refused defendants' writ. After entry of pleas, the defendants appealed the denial of the motion to suppress. This court held that it was precluded from addressing the issue because defendants' briefs reflected no new issues not previously raised and considered in the writ application.
Post trial, defendant King raised the denial of the motion to suppress as an error on appeal. This court observed that the trial had failed to bring out new facts not raised in the suppression hearing and that no new issues were raised in the appellate brief. We held we were precluded from reconsideration of the issue.
In the instant case, Junior appeals our previous denial of his motion to remand. He argues that the ruling was incorrect and prejudicial, without specifying reasons or providing case citations. His brief raises no new issues not presented in the original motion to remand. At the time of the motion to remand the trial court was divested of jurisdiction to hear a show-cause rule. LSA-C.Cr.P. art. 916. Appellate counsel made no showing in the motion, such as an assertion of newly discovered evidence, on which to found good cause for remand. He admitted that the discovery he then sought had been previously produced to trial counsel pursuant to a pre-trial motion. Our decision not to remand the case was a proper exercise of our discretionary power. See, generally, LSA-C.C.P. art. 2164; Washington v. Hendrix Manufacturing Co., 106 So.2d 528 (La.App. 2 Cir.1958). There was no palpable error in our prior ruling on the motion to remand. Therefore, the principle of "law of the case" precludes further review of defendant's third assignment of error.
Lastly, appellant Junior raises the allegation of patent error, although he points *28 none out. Our review of the record reflects none. LSA-C.Cr.P. art. 920.
For the foregoing reasons the conviction and sentence of the defendant, Donald Junior, are affirmed.
AFFIRMED.